UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

TIMOTHY COBB,

                        Plaintiff,

v.

                                                               Case # 16-CV-6265-FPG

                                                                 DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

Timothy Cobb ("Cobb" or "Plaintiff") brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner") that denied his application for disability insurance benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 12, 17. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

On September 6, 2012, Cobb protectively applied for DIB with the Social Security Administration ("the SSA"). Tr.[1] 148-54. He alleged that he had been disabled since November 16, 2011 due to lumbar disc degeneration, thoracic spine injury, and spinal cord deformity. Tr. 201. On April 16 and August 11, 2014, Cobb and a vocational expert ("VE") appeared and testified at hearings via videoconference before Administrative Law Judge Elizabeth W. Koennecke ("the ALJ"). Tr. 36-93. On August 18, 2014, the ALJ issued a decision finding that

---

[1] References to "Tr." are to the administrative record in this matter.

1

Cobb was not disabled within the meaning of the Act. Tr. 13-21. On April 4, 2016, the Appeals Council denied Cobb's request for review. Tr. 1-6. Thereafter, Cobb commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or

combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

The ALJ's decision analyzed Cobb's claim for benefits under the process described above. At step one, the ALJ found that Cobb had not engaged in substantial gainful activity since the alleged onset date. Tr. 15. At step two, the ALJ found that Cobb has the following severe impairments: lumbar and thoracic spinal stenosis. Tr. 15-16. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any Listings impairment. Tr. 16.

Next, the ALJ determined that Cobb retained the RFC to occasionally lift and carry 20 pounds, frequently lift 10 pounds, and push and pull 50 pounds if the weight is on a frictionless surface; sit and stand for six hours at a time; stand for 30 minutes in the same position; and rarely stoop and twist. Tr. 16-20.

At step four, the ALJ found that this RFC prevents Cobb from performing his past relevant work as a loader, railroad car builder, appliance deliverer, and construction worker. Tr. 20. At step five, the ALJ relied on the VE's testimony and found that Cobb can adjust to other work that exists in significant numbers in the national economy given his RFC, age, education, and work experience. Tr. 20-21. Specifically, the VE testified that Cobb could work as a marker, photocopying machine operator, and marker II. Tr. 21. Accordingly, the ALJ concluded that Cobb was not "disabled" under the Act. *Id.*

## II. Analysis

Cobb argues that remand is required because the ALJ violated the treating physician rule. ECF No. 12-1, at 4-10. Specifically, Cobb asserts that the opinion of his treating physician

4

Anthony Witte, M.D. ("Dr. Witte") was entitled to controlling weight and that the ALJ did not provide the requisite "good reasons" for discounting his opinion. *Id.*

The "treating physician rule" is "a series of regulations set forth by the Commissioner . . . detailing the weight to be accorded a treating physician's opinion." *De Roman v. Barnhart*, No. 03 Civ. 0075 (RCC) (AJP), 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003) (citing 20 C.F.R. § 404.1527). Under the treating physician rule, the ALJ must give controlling weight to a treating physician's opinion when that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). While an ALJ may discount a treating physician's opinion if it does not meet this standard, the ALJ must "comprehensively set forth [his or her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

Even when a treating physician's opinion is not given "controlling" weight, the ALJ must still consider several factors in determining how much weight it should receive. The ALJ must consider "the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quotation marks, alterations, and citations omitted); 20 C.F.R. § 404.1527(c)(1)-(6).

On February 4, 2014, Dr. Witte opined that Cobb could sit and stand for 30 minutes at a time and up to four hours total in an eight hour workday; needed to walk around every 30 minutes, shift positions at will, and take unscheduled breaks every 30 minutes for five to ten minutes; and could occasionally lift less than 10 pounds, rarely lift 10 pounds, and never lift 20 or 50 pounds. Tr. 366. He also opined that Cobb could occasionally climb ladders and stairs, could not twist, stoop, bend, crouch, or squat, and had significant limitations reaching, handling, and fingering. Tr. 367. Dr. Witte indicated that Cobb is likely to be absent from work more than four days per month due to his impairments or treatment and that pain or other symptoms would frequently interfere with the attention and concentration needed to perform work tasks. Tr. 365, 367. Finally, Dr. Witte concluded that Cobb was incapable of sustaining full time work and noted that his assessed limitations applied as of 2011. Tr. 367.

The ALJ discussed Dr. Witte's opinion at length and it is clear that she considered the requisite factors when discounting that opinion. Tr. 17-18. The ALJ summarized Dr. Witte's findings and afforded "some weight" to his opinion because he treated Cobb and "to the extent that his assessment is consistent with light work activity." Tr. 17. The ALJ noted that she specifically accounted for Dr. Witte's opinion in the RFC by limiting Cobb to rare stooping and twisting and recognizing that he could only stay in one position for 30 minutes at a time. Tr. 17-18.

The ALJ then determined that Dr. Witte's assessment was "not entitled to greater weight" for several reasons. Tr. 18. First, the ALJ discounted Dr. Witte's opinion because "he is a general practitioner, and the specialists [Cobb] treats with for his workers' compensation claim indicate that he is not as limited as Dr. Witte indicated in his assessment." *Id.* Second, the ALJ noted that he was not adopting Dr. Witte's determination that Cobb would frequently be absent

from work, experienced attention and concentration deficits, had manipulative and neck limitations, and was unable to sustain full time work activity because "these limitations are not consistent with [Cobb]'s sporadic, conservative treatment history." *Id.* Finally, the ALJ pointed out that "Dr. Witte's opinion was rendered prior to [Cobb] undergoing trigger point injections, which he indicated helped alleviate his musculoskeletal symptoms." *Id.* (citing Tr. 383). These reasons will be discussed in turn below.

### 1. Specialization and Consistency with Other Medical Opinions

The SSA's regulations explain that an ALJ will "generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(c)(5). The regulations also provide that an ALJ generally will give more weight to a medical opinion that is "consistent . . . with the record as a whole." *Id.* at § 404.1527(c)(4). Here, in accordance with those regulations, the ALJ discounted Dr. Witte's opinion in part because he is a general practitioner and the specialists that Cobb treated with for his workers' compensation claim prescribed less limitations. Tr. 18. Cobb asserts that Dr. Witte's opinion is actually consistent with other medical source opinions in the record.

Cobb first argues that Dr. Witte's opinion is consistent with the opinion of orthopedic surgeon Ibrahim Y. Al-Sinjari, M.D. ("Dr. Al-Sinjari"), who opined that Cobb was limited to sedentary work and could not perform heavy lifting, pushing, prolonged standing, or labor work. Tr. 290. As noted in her decision, however, the ALJ gave only "some weight" to Dr. Al-Sinjari's opinion because he is an orthopedic surgeon and evaluated Cobb on multiple occasions, but "the record does not fully support the conclusion that [Cobb] is limited to sedentary work activity." Tr. 18. These reasons for discounting Dr. Al-Sinjari's opinion are all in accordance with the

7

SSA's regulations. *See* 20 C.F.R. §§ 404.1527(c)(5) (SSA will give more weight to a specialist's opinion), (c)(1) (SSA will give more weight to a medical source's opinion who examined the claimant), (c)(4) (SSA will give more weight to an opinion that is consistent with the record as a whole).

Cobb also asserts that Dr. Witte's opinion is consistent with the opinions of Cristina Demian, M.D. ("Dr. Demian") and Bruce Barron, M.D. ("Dr. Barron"). Tr. 375-76, 378, 380. These doctors opined that Cobb had to change positions as needed for comfort, could bend, stoop, crawl, twist, and stand as tolerated, could lift up to 20 pounds, and could push and pull up to 50 pounds on a level frictionless surface. Tr. 378, 380. The ALJ afforded "significant weight" to these opinions because both doctors specialize in occupational medicine, and their opinions support the conclusion that Cobb can perform light work and are consistent with Cobb's conservative treatment. Tr. 18; *see also* 20 C.F.R. § 404.1527(c)(4)-(5).

Cobb is correct that Drs. Demian, Barron, and Witte all provided similar opinions as to changing positions, bending, stooping, crawling, twisting, and standing. However, Dr. Demian and Dr. Barron's opinions are far less restrictive than Dr. Witte's opinion in other respects. Tr. 365-67, 376, 378. Their opinions as to lifting are in direct conflict, as Drs. Demian and Barron opined that Cobb could lift up to 20 pounds and could push and pull up to 50 pounds, but Dr. Witte opined that Cobb could never lift 20 pounds, rarely lift 10 pounds, and occasionally lift less than 10 pounds. Tr. 366, 376, 378. Dr. Witte's opinion contains numerous highly restrictive limitations as to attention and concentration, sitting, walking, taking breaks, head positions, using the hands, fingers, and arms, and absences from work. Tr. 365-67. Dr. Demian and Dr. Barron's opinions do not contain any of these limitations. Tr. 376, 378. Thus, the Court agrees with the ALJ that Dr. Witte's opinion is inconsistent with Dr. Demian and Dr. Barron's opinions.

Cobb also argues that the RFC assessment is flawed because it lacks the option to sit, stand, and walk "at will," which Drs. Demian, Barron, and Witte all recommended. However, the RFC assessment does not have to "perfectly correspond" with one particular medical source opinion. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citation omitted) (summary order). Instead, the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Id.* In this case, the ALJ had seven medical opinions to rely on and she summarized each doctor's findings and stated the weight given to his or her opinion. Tr. 17-18. Notably, state agency medical consultant S. Putcha, M.D. ("Dr. Putcha") opined that Cobb was capable of light work and did not assess any limitation as to sitting, standing, and walking at will. Tr. 57-59. The ALJ gave "great weight" to Dr. Putcha's opinion because it was based on a review of the medical record and was consistent with Cobb's treatment history. Tr. 17. These were proper reasons to give great weight to Dr. Putcha's opinion, 20 C.F.R. § 404.1527(c)(3), (4), (6), and "an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, since such consultants are deemed to be qualified experts in the field of social security disability." *Baszto v. Astrue*, 700 F. Supp. 2d 242, 249 (N.D.N.Y. 2010) (citations omitted).

2. **Treatment History**

As mentioned above, an ALJ generally will give more weight to a medical opinion that is consistent with the record as a whole. 20 CFR § 404.1527(c)(4). Moreover, an ALJ is entitled to consider treatment the claimant has or has not received and the type, dosage, effectiveness, and side effects of medications taken when he or she evaluates the claimant's symptoms. 20 C.F.R. § 404.1529(c)(3)(iv)-(v). Here, in accordance with those regulations, the ALJ discounted Dr. Witte's opinion in part because it was inconsistent with Cobb's "sporadic, conservative treatment

9

history." Tr. 18. Specifically, the ALJ declined to adopt Dr. Witte's determination that Cobb would frequently be absent from work, experience attention and concentration deficits, had manipulative and neck limitations, and was unable to sustain full-time work activity. *Id.*

Although Cobb contends that the ALJ did not explain this conclusion, the ALJ discussed Cobb's treatment history later in her decision. Tr. 19. This discussion supports her conclusion to discount Dr. Witte's opinion and that Cobb is capable of light work. The ALJ pointed out that in December 2011 Cobb "had not tried any conservative management," like physical therapy or pain management, and denied taking pain medication. Tr. 19 (citing Tr. 260-61). Additionally, in March 2013 Cobb reported that a thoracic epidural improved his pain, Flexeril (a muscle relaxant) was working well, and the use of a TENS unit helped alleviate muscle spasms. Tr. 19 (citing Tr. 356). The ALJ also relied on February and March 2014 treatment notes that indicated that trigger point injections decreased Cobb's muscle spasms and pain and that he was "able to do more." Tr. 19 (citing Tr. 383, 402). Although Cobb argues that his treatment was not "sporadic" or "conservative," the ALJ was entitled to weigh all the evidence before her and to resolve any conflicts in the record. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve.") (citation omitted); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (when the court reviews a denial of disability benefits it must "defer to the Commissioner's resolution of conflicting evidence"). It is clear that the ALJ found that this evidence undermined Dr. Witte's highly restrictive opinion and therefore did not afford it controlling weight.

### 3. Improvement with Trigger Point Therapy

In addition to the factors discussed above, the SSA's regulations contain a catch-all category that allows an ALJ to consider any factors bought to his or her attention that tend to

support or contradict a medical opinion. 20 C.F.R. § 404.1527(c)(6). Here, pursuant to her authority to consider "other factors," the ALJ discounted Dr. Witte's opinion because it "was rendered prior to [Cobb] undergoing trigger point injections, which he indicated helped alleviate his musculoskeletal symptoms." Tr. 18 (citing Tr. 383).

As Cobb correctly points out, he received trigger point injections *before* Dr. Witte rendered his opinion. On August 6, 2013, Cobb received trigger point injections (Tr. 416) and at a follow up appointment on September 17, 2013 he reported "excellent relief from injections" (Tr. 411). At his next appointment on November 14, 2013, Cobb reported that the trigger point injections provided relief for two months but then wore off, and he received another round of injections. Tr. 408-09. On February 4, 2014, after Cobb had received trigger point injections twice, Dr. Witte provided his RFC assessment. Tr. 365-67. Shortly thereafter on February 13, 2014, Cobb reported that the trigger point injections decreased his muscle spasms and pain and the doctor noted that he was "doing better after his trigger point injection." Tr. 383-84. On March 13, 2014, Cobb reported that the trigger point injections decreased his muscle spasms and pain, he was no longer having sharp pain, and he was "able to do more." Tr. 402-03. Although the ALJ incorrectly stated that Cobb did not receive trigger point injections until after Dr. Witte provided his assessment, it is clear that she concluded that Cobb's reported improvement from these injections undermined the severity of Dr. Witte's opinion and that the limitations he assessed were inconsistent with the record as a whole. 20 C.F.R. § 404.1527(c)(4).

Accordingly, for all the reasons stated, the Court finds that the ALJ did not violate the treating physician rule and that she provided the requisite good reasons for discounting Dr. Witte's opinion.

## CONCLUSION

For the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 17) is GRANTED, and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 12) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: May 8, 2017
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court